UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

---

UNITED STATES OF AMERICA and the
STATE OF GEORGIA DEPARTMENT OF
NATURAL RESOURCES

               Plaintiffs,              Civil Action No. 2:26-cv-00177-RWS

     v.

GOLD CREEK FOODS, LLC

               Defendant.

---

**CONSENT DECREE**

**TABLE OF CONTENTS**

I.      BACKGROUND .................................................................................................................3
II.     JURISDICTION AND VENUE ......................................................................................4
III.    PARTIES BOUND ...........................................................................................................4
IV.     DEFINITIONS...................................................................................................................5
V.      OBJECTIVES ...................................................................................................................7
VI.     PERFORMANCE OF THE NRD WORK......................................................................7
VII.    PROPERTY REQUIREMENTS ....................................................................................7
VIII.   INDEMNIFICATION......................................................................................................8
IX.     PAYMENTS FOR COSTS..............................................................................................9
X.      FORCE MAJEURE ........................................................................................................10
XI.     DISPUTE RESOLUTION .............................................................................................11
XII.    STIPULATED PENALTIES ........................................................................................12
XIII.   COVENANTS BY PLAINTIFFS..................................................................................14
XIV.    COVENANTS BY DEFENDANT.................................................................................15
XV.     EFFECT OF SETTLEMENT .......................................................................................15
XVI.    NOTICES AND SUBMISSIONS..................................................................................15
XVII.   APPENDIXES ..................................................................................................................16
XVIII.  MODIFICATIONS TO DECREE .................................................................................16
XIX.    SIGNATORIES ...............................................................................................................16
XX.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT............................17
XXI.    INTEGRATION ..............................................................................................................17
XXII.   FINAL JUDGMENT ......................................................................................................17

# I.    BACKGROUND

WHEREAS, the United States of America ("United States"), on behalf of the United States Department of the Interior ("DOI"), and the State of Georgia (the "State") through the Georgia Department of Natural Resources filed a complaint in this matter under section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607.

WHEREAS, DOI, and the State, (together, "the Trustees" and, individually, a "Trustee"), under the authority of Section 107(f) of CERCLA, 42 U.S.C. § 9607(f), and 40 C.F.R. Part 300, subpart G, serve as natural resource trustees related to the Flat Creek Hazardous Substance Release in Dawsonville, Georgia on or about March 20, 2018 ("Incident") for the assessment, recovery, and restoration of damages for injury to, destruction of, or loss of natural resources and the services provided by those injured resources under their trusteeship.

WHEREAS, Plaintiffs in their complaint seek, *inter alia*: (1) payment of damage assessment costs incurred by the Trustees in connection with the Incident, and (2) damages for injuries to natural resources and natural resource services related to the Incident.

WHEREAS, the Trustees began assessing damages to natural resources related to the Incident in 2018 by finding that hazardous substances had been released into or onto the Gold Creek Foods, LLC Facility ("Facility") and Flat Creek and that natural resources likely had been injured by the releases, including Cherokee darter and other aquatic species that migrate through Flat Creek, and that data sufficient to pursue a natural resource damage assessment were available or could likely be obtained at a reasonable cost.

WHEREAS, the Trustees have evaluated natural resources injured as part of a damage assessment related to the Incident, and the Trustees have developed and analyzed information sufficient to support a settlement that is fair, reasonable, and in the public interest.

WHEREAS, to facilitate resolving natural resource damage claims, relying upon the results of state investigations, regulatory standards, and scientific literature, the Trustees developed an estimate of the amount of injury to natural resources as a result of the Incident. The Trustees have determined that settling with Defendant as provided in this Consent Decree would fairly compensate the public for these injuries to natural resources.

WHEREAS, the Trustees have determined that the timely implementation of the restoration project(s) by Defendant under this Decree will constitute actions necessary to protect and restore natural resources injured by the Incident. Further, the Trustees have determined that the timely implementation of the restoration project(s) and payments to be made under this Decree will adequately address Defendant's alleged liability for natural resource damages related to the Incident.

WHEREAS, the Trustees have determined through the damage assessment and restoration planning process that they will not assert a reservation of right to sue for future liability other than reservations specified in Section XIII because of the volume and mobility of

3

the hazardous substance released in this event, the high degree of information known about the release and subsequent injuries, the payment by Defendant for monitoring and adaptive management costs, and the public interest consideration of advancing restoration actions in Flat Creek and the surrounding watershed;

WHEREAS, Defendant does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint, does not admit the facts alleged in the complaint or set forth herein, except as necessary to establish jurisdiction, nor does it acknowledge that the release or threatened release of hazardous substance(s) at or from the Facility constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

WHEREAS, the Parties recognize, and the Court by entering this Decree finds, that this Decree has been negotiated by the Parties in good faith, that implementation of this Decree will expedite restoration and will avoid prolonged and complicated litigation among the Parties, and that this Decree is fair, reasonable, in the public interest, and consistent with CERCLA.

NOW, THEREFORE, it is hereby **ORDERED** and **DECREED** as follows:

## II.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1345, and sections 106, 107 and 113(b) of CERCLA, and personal jurisdiction over the Parties. Venue lies in this District under section 113(b) of CERCLA and 28 U.S.C. §§ 1391(b), and 1395(a), because the Incident took place in this judicial district. This Court retains jurisdiction over the subject matter of this action and over the Parties for the purpose of resolving disputes arising under this Decree, entering orders modifying this Decree, or effectuating or enforcing compliance with this Decree. Defendant may not challenge the terms of this Decree or this Court's jurisdiction to enter and enforce this Decree.

## III.    PARTIES BOUND

2.    This Decree is binding upon Plaintiffs and upon Defendant and its successors. Unless the United States and the State otherwise consent, any change in ownership or corporate or other legal status of Defendant, including any transfer of assets or real or personal property, does not alter any of Defendant's obligations under this Decree. Defendant's responsibilities under this Decree cannot be assigned except under a modification executed in accordance with ¶ 40.

3.    In any action to enforce this Decree, Defendant may not raise as a defense the failure of any of its officers, directors, employees, agents, contractors, subcontractors, or any person representing Defendant to take any action necessary to comply with this Decree. Defendant shall provide notice of this Decree to each person representing Defendant with respect to the Facility or the Work. Defendant shall provide notice of this Decree to each contractor performing any Work and shall ensure that notice of the Decree is provided to each subcontractor performing any Work.

## IV.    DEFINITIONS

4.    Subject to the next sentence, terms used in this Decree that are defined in CERCLA or the regulations promulgated under CERCLA have the meanings assigned to them in CERCLA and the regulations promulgated under CERCLA. Whenever the terms set forth below are used in this Decree, the following definitions apply:

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" or "Decree" means this consent decree, all appendixes attached hereto (listed in Section XVII), and all deliverables incorporated into the Decree. If there is a conflict between a provision in Sections I through XXII and a provision in any appendix or deliverable, the provision in Sections I through XXII controls.

"Covered Natural Resource Damages" means damages related to the Incident, including costs of damage assessment, recoverable under Section 107 of CERCLA, 42 U.S.C. § 9607, for injury to, destruction of, loss of, loss of use of, or impairment of natural resources in Flat Creek, including, but not limited to: (i) the costs of assessing such injury, destruction, or loss or impairment of natural resources; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost natural resources or of acquisition of equivalent resources; (iii) the costs of planning such restoration activities; (iv) compensation for injury, destruction, loss, impairment, diminution in value, or loss of use of natural resources; and (v) each of the categories of recoverable damages described in 43 C.F.R. § 11.15, and applicable State law.

"Day" or "day" means a calendar day. In computing any period under this Decree, the day of the event that triggers the period is not counted and, where the last day is not a working day, the period runs until the close of business of the next working day. "Working day" means any day other than a Saturday, Sunday, or federal or State holiday.

"Defendant" means Gold Creek Foods, LLC.

"DOI" means the United States Department of the Interior.

"DOJ" means the United States Department of Justice.

"Effective Date" means the date upon which the Court's approval of this Decree is recorded on its docket.

"Flat Creek" means the stream originating on the eastern side of Dawsonville, Georgia, and flowing in a westerly direction south of Dawsonville for approximately four stream-miles before terminating at its confluence with Shoal Creek in Dawson County.

"Gold Creek Foods, LLC Facility" or "Facility" means the chicken processing plant located at 686 Highway 9 North, Dawsonville, GA 30534.

"Incident" means the March 20, 2018 event that resulted in release of contents of a 55-gallon drum of ferric chloride, a hazardous substance, through the on-site stormwater system and into Flat Creek.

"Including" or "including" means "including but not limited to."

"Interest" means interest at the rate specified for interest on investments of the Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, as provided under section 107(a) of CERCLA. The applicable rate of interest will be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. As of the date of lodging of this Decree, rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"NRD Work" or "Work" means all obligations of Defendant under Sections VI (Performance of the NRD Work) through VIII (Indemnification) that pertain to implementation of the Statement of Work.

"Paragraph" or "¶" means a portion of this Decree identified by an Arabic numeral or an uppercase or lowercase letter.

"Parties" means the Plaintiffs and Defendant.

"Performance Standards" means the standards of control and other substantive requirements, criteria, or limitations, including design, construction and post-construction standards, and qualitative and quantitative habitat standards and other success criteria set forth in the SOW, and in approved plans, designs, deliverables, or reports required by the Decree or SOW.

"Plaintiffs" means the United States, and the State.

"Section" means a portion of this Decree identified by a Roman numeral.

"State" means the State of Georgia, Department of Natural Resources.

"State Past Costs" means costs of assessment and restoration planning incurred by the State through June 30, 2023.

"Statement of Work" or "SOW" means the natural resource restoration document attached as Appendix A, which describes the activities Defendant must perform under the oversight and approval of the Trustees to address Covered Natural Resource Damages under this Consent Decree.

"Trustees" mean the United States Department of the Interior and the Georgia Department of Natural Resources.

"Trustees Future Restoration and Monitoring Costs" means costs incurred by the Trustees after June 30, 2023, in implementing and overseeing restoration planning and compliance and performing biological monitoring related to the Incident.

6

"United States" means the United States of America and each department, agency, and instrumentality of the United States, including DOI.

"United States Past Costs" means costs of assessment and restoration planning incurred by the State through June 30, 2023.

## V.   OBJECTIVES

5.   The objectives of the Parties in entering into this Decree are to compensate for natural resource damages (including natural resource service losses) through implementation of the restoration project in the Statement of Work, to pay response costs and damage assessment costs of Plaintiffs, and to resolve and settle the claims of Plaintiffs against Defendant as provided in this Decree.

## VI.   PERFORMANCE OF THE NRD WORK

6.   Defendant shall finance, develop, implement, and provide for the maintenance, monitoring, and stewardship of the natural resource restoration project as set forth in the SOW, in accordance with the SOW and any plans approved by the Trustees under the terms of the SOW.  Defendant shall meet or exceed all Performance Standards as set forth in the SOW.

7.   Defendant shall provide a copy of this Consent Decree to all contractors hired to perform any NRD Work, and to each person representing Defendant with respect to the NRD Work, and shall condition all contracts entered into for the purposes of performing any NRD Work upon performance of that work in conformity with the terms of the Consent Decree. Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the NRD Work.  Defendant shall be responsible for ensuring that its contractors and subcontractors perform the NRD Work contemplated herein in accordance with this Consent Decree.

8.   **Compliance with Applicable Law**. Nothing in this Decree affects Defendant's obligations to comply with all applicable federal and state laws and regulations.

## VII.   PROPERTY REQUIREMENTS

9.   **Trustee Access to Restoration Project Locations and Information.**

a.   Commencing upon the Effective Date, Defendant shall take the steps necessary to ensure the Trustees and their representatives have access at all reasonable times to the restoration project location identified in the SOW. For any such location not owned by Defendant, Defendant will use best efforts to secure from the owner(s) an agreement, enforceable by the United States and the State, requiring such owner to provide the Parties to this Consent Decree, and their respective representatives, contractors, and subcontractors, with access at all reasonable times to such owner's property to conduct any activity related to the restoration project. For purposes of this Paragraph, "best efforts" means the efforts that a reasonable person in Defendant's position would use to achieve the goal in a timely manner, including the cost of employing professional assistance and the payment of reasonable sums of money to secure

7

access agreements. Defendant will provide the United States and the State with copies of any such agreement.

b.    Each Trustee shall have the authority to enter any restoration project location at any reasonable time, subject to giving Defendant and any third-party owner notice forty-eight (48) hours in advance of entry; provided that advance notice is not required if the Trustees determine that immediate entry is needed to prevent, terminate, or mitigate a violation of this Consent Decree or where immediate action is otherwise required to address conditions on the restoration project location. Trustees and their representatives shall have the authority to move about those restoration project locations in a reasonable manner, including in compliance with all safety requirements, for the purposes of overseeing the implementation of the NRD Work, including, but not limited to:

(1)    Monitoring and assessing progress on the planning, development, maintenance, and monitoring of the NRD Work;

(2)    Verifying any data or information submitted to the Trustees in connection with the NRD Work;

(3)    Inspecting and copying records, operation logs, contracts or other documents maintained or generated by Defendant or their contractors in connection with the NRD Work;

(4)    Conducting such tests, investigations, or sample collections as deemed necessary to monitor compliance with the applicable plans approved pursuant to the SOW, investigate or assess contamination at or near the restoration project location, or to assist in further identifying and quantifying natural resource injuries requiring restoration actions and in planning and carrying out further restoration actions; and

(5)    Implementing work at a restoration project location.

c.    The Trustees may direct Defendant to use a camera, sound recording device, or other type of equipment. The Defendant may retain a copy of any such photographs or video recordings. The Trustees may also use their own camera, sound recording device, or other type of equipment to record the work done on, or conditions at, any restoration project location, or to record indications of injury to natural resources. Defendant may have access to or receive copies of any such recording upon request to the Trustees.

## VIII.  INDEMNIFICATION

10.    **Indemnification**

a.    Plaintiffs do not assume any liability by entering into this Decree. Defendant shall indemnify and save and hold harmless Plaintiffs and their officials, agents, employees, contractors, subcontractors, and representatives for or from any claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons

acting on Defendant's behalf or under their control, in carrying out activities under this Decree. Further, Defendant agrees to pay Plaintiffs all costs they incur including attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against Plaintiffs based on negligent or other wrongful acts or omissions of Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control in carrying out activities under this Decree. Plaintiffs may not be held out as parties to any contract entered into by, or on behalf of, Defendant in carrying out activities under this Decree. Defendant and any such contractor may not be considered an agent of any Plaintiff.

b.      Any Plaintiff shall give Defendant notice of any claim for which such Plaintiff plans to seek indemnification in accordance with this ¶ 10, and shall consult with Defendant prior to settling such claim.

11.      Defendant covenants not to sue and shall not assert any claim or cause of action against Plaintiffs for damages or reimbursement or for set-off of any payments made or to be made to Plaintiffs, arising from or on account of any contract, agreement, or arrangement between Defendant and any person for performance of NRD Work or other activities relating to the Incident, including claims on account of construction delays. In addition, Defendant shall indemnify and save and hold Plaintiffs harmless with respect to any claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Defendant and any person for performance of NRD Work relating to the Incident, including claims on account of construction delays.

## IX.    PAYMENTS FOR COSTS

12.      **Payment for Past Assessment Costs**. Within thirty (30) days of the Effective Date of this Decree, Defendant will pay a total of $106,772.55 for past assessment costs incurred by the Trustees, as described below. In the event that payment is not made when due, Defendant shall pay Interest on the unpaid balance commencing on the payment due date and accruing through the date of full payment.

a.      <u>Payment for United States Past Assessment Costs.</u> Within thirty (30) days after the Effective Date, Defendant shall pay a total of $96,274.96 to the United States for United States Past Assessment Costs. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Northern District of Georgia after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Decree. The entirety of this amount shall be deposited in the DOI Natural Resource Damage Assessment and Restoration Fund, to be applied toward natural resource damage assessment costs incurred by DOI.

b.      <u>Payment for State Past Assessment Costs</u>. Within thirty (30) days after the Effective Date, Defendant shall pay a total of $10,497.59 to the State of Georgia for State Past Assessment Costs. Payment shall be made by check to:

Georgia Department of Natural Resources
Attn: Kate Iannuzzi
2 Martin Luther King, Jr. Drive, S.E.
Suite 1252 East
Atlanta, Georgia 30334-9000

13.     **Payment for Adaptive Management Costs.**  Within 30 days after the Effective Date, Defendant shall pay $137,831 to the United States as a joint recovery of natural resource damages by the Plaintiffs. In the event this payment is not made when due, Defendant shall pay Interest on the unpaid balance commencing on the payment due date and accruing through the date of full payment. The amount paid shall be deposited in the DOI Natural Resource Damage Assessment and Restoration Fund for the joint benefit and use of the Trustees to be used to restore, rehabilitate, replace, and/or acquire the equivalent of the natural resources alleged to be injured as a result of the release or threat of release of hazardous substances at or from the Incident in accordance with this Decree. The activities for which restoration funds may be applied include: (a) implementation of restoration projects; and (b) operation, maintenance, and monitoring of completed restoration projects and adaptive management to reinstate or enhance the effectiveness of restoration in accordance with 43 C.F.R. § 11.81 and 42 U.S.C. §§ 9607(f) and 9611(i).

14.     **Payment for Future Restoration and Monitoring Costs.**

a.     Defendant will reimburse the Trustees Future Restoration and Monitoring Costs, for an amount not to exceed $112,169. The period during which the Trustees will incur such costs ends on the ending date of Defendant's responsibility for implementing the restoration plan, as set forth in the SOW. Nothing in this Paragraph affects the Trustees' reservation of rights in Paragraph 31.

b.     Each year, beginning one year after the Effective Date, the Trustees will provide Defendant with an invoice detailing the Trustees Future Restoration and Monitoring Costs through the prior calendar year. Within thirty (30) days of receipt of the Trustees' invoice, Defendant shall reimburse the Trustees for those costs. Defendant shall make all such payments as directed by the Trustees, and provide notice of such payments to the United States and the State, in accordance with Section XVI (Notices and Submissions).

## X.     FORCE MAJEURE

15.     "Force majeure," for purposes of this Decree, means any event arising from causes beyond the control of Defendant, or of any entity controlled by Defendant that delays or prevents the performance of any obligation under this Decree despite Defendant's best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the NRD Work or a failure to achieve the Performance Standards.

16. If any event occurs for which Defendant will or may claim a force majeure, Defendant shall notify the Trustees by email. The deadline for the initial notice is seven days after the date Defendant first knew or should have known that the event would likely delay performance. Defendant shall be deemed to know of any circumstance of which any contractor or subcontractor of, or entity controlled by Defendant knew or should have known. Within ten days thereafter, Defendant shall send a further notice to the Trustees that includes: (i) a description of the event and its effect on Defendant's completion of the requirements of the Decree; (ii) a description of all actions taken or to be taken to prevent or minimize the adverse effects or delay; (iii) the proposed extension of time for Defendant to complete the requirements of the Decree; (iv) a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment; and (v) all available proof supporting Defendant's claim of force majeure. Failure to comply with the notice requirements herein regarding an event precludes Defendant from asserting any claim of force majeure regarding that event, provided, however, that if the Trustees, despite late or incomplete notice, are able to assess to their satisfaction whether the event is a force majeure under ¶ 15 and whether Defendant has exercised their best efforts under ¶ 15, the Trustees may, in their unreviewable discretion, excuse in writing Defendant's failure to submit timely or complete notices under this Paragraph.

17. The Trustees will notify Defendant of their determination whether Defendant is entitled to relief under ¶ 15, and, if so, the duration of the extension of time for performance of the obligations affected by the force majeure. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. Defendant may initiate dispute resolution under Section XI regarding the Trustees' determination within 15 days after receipt of the determination. In any such proceeding, Defendant has the burden of proving that they are entitled to relief under ¶ 15 and that their proposed extension was or will be warranted under the circumstances.

18. A failure by the Trustees to timely complete any activity under the Decree or the SOW is not a violation of the Decree, provided, however, that if such failure prevents Defendant from timely completing a requirement of the Decree, Defendant may seek relief under this Section.

## XI.    DISPUTE RESOLUTION

19. Unless otherwise provided in this Decree, Defendant must use the dispute resolution procedures of this Section to resolve any dispute arising under this Decree. The United States may enforce any requirement of the Decree that is not the subject of a pending dispute under this Section.

20. A dispute will be considered to have arisen when the Defendant sends a written notice of dispute ("Notice of Dispute") to the Trustees in accordance with ¶ 38. Disputes arising under this Decree must in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations may not exceed 20 days after the dispute arises, unless the parties to the dispute otherwise agree in writing. If the parties cannot resolve the dispute by informal negotiations, the position advanced by the Trustees is binding unless Defendant initiates formal dispute resolution under ¶ 21. By agreement of the parties,

11

mediation may be used during this informal negotiation period to assist the parties in reaching a voluntary resolution or narrowing of the matters in dispute.

21.    **Formal Dispute Resolution**

a.    **Statements of Position**. Defendant may initiate formal dispute resolution by serving on the Trustees, within 20 days after the conclusion of informal dispute resolution under ¶ 20, an initial Statement of Position regarding the matter in dispute. The Trustee(s)' responsive Statements of Position are due within 20 days after receipt of Defendant's Statement of Position. All Statements of Position must include supporting factual data, analysis, opinion, and other documentation. The position advanced in the Trustees' Statement of Position shall be binding on Defendant unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

22.    **Judicial Review**

a.    Defendant may seek judicial review of the dispute by filing, within 20 days after receiving it, a motion with the Court and serving the motion on Trustees. The motion must describe the matter in dispute and the relief requested. The parties to the dispute shall brief the matter in accordance with local court rules.

b.    **Standard of Review for Disputes Concerning Matters Accorded Record Review**. In any dispute brought under subparagraph (a) regarding the adequacy or appropriateness of plans, procedures to implement plans, schedules, or any other item requiring approval by the Trustees under the Decree; the adequacy of Defendant's performance of the NRD Work; and any other dispute that is accorded review on the administrative record under applicable principles of administrative law, Defendant bears the burden of demonstrating, based on the administrative record, that the Trustees' position is arbitrary and capricious or otherwise not in accordance with law.

c.    **Standard of Review for other disputes.**  Judicial review of any dispute not governed by ¶ 22.b shall be governed by applicable principles of law.

23.    The initiation of dispute resolution procedures under this Section does not extend, postpone, or affect in any way any requirement of this Decree, except as the Trustees agree, or as determined by the Court. Stipulated penalties with respect to the disputed matter will continue to accrue, but payment is stayed pending resolution of the dispute, as provided in ¶ 25.

## XII.    STIPULATED PENALTIES

24.    Unless the noncompliance is excused under Section X (Force Majeure), Defendant is liable to the Trustees on a 50/50 basis for the following stipulated penalties for any failure: (i) to pay any amount due under Section IX; (ii) to submit timely or adequate deliverables under Section 6 of the SOW; or (iii) to timely initiate and/or complete any Trustee-approved NRD Work activity:

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $250 |
| 15th through 30th day | $500 |
| 31st day and beyond | $1,000 |

25.    **Accrual of Penalties**. Stipulated penalties accrue beginning with the day after the date performance is due, or the day a noncompliance occurs, whichever is applicable, until the date the requirement is completed or the final day of the correction of the noncompliance. Nothing in this Decree prevents the simultaneous accrual of separate penalties for separate noncompliances with this Decree. Stipulated penalties accrue regardless of whether Defendant has been notified of its noncompliance, and regardless of whether Defendant has initiated dispute resolution under Section XI, provided, however, that no penalties will accrue as follows:

a.    with respect to a submission that the Trustees subsequently determine is deficient under ¶ 6.5 of the SOW, during the period, if any, beginning on the 31st day after the Trustees' receipt of such submission until the date that the Trustees notify Defendant of any deficiency;

b.    with respect to a matter that is the subject of informal dispute resolution under Section XI, during the period, if any, beginning on the 21st day after the Defendant submits a Notice of Dispute until the conclusion of informal dispute resolution as to the contested portion of penalties only and consistent with the payment obligations after resolution of the dispute set forth in ¶ 26; or

c.    with respect to a matter that is the subject of judicial review by the Court under ¶ 21, during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. If the Court rules in favor of the Defendant regarding the dispute, no stipulated penalties shall be due for the alleged deficiency or noncompliance that is the subject of the dispute.

26.    **Demand and Payment of Stipulated Penalties**. The Trustees may send Defendant a demand for stipulated penalties. The demand will include a description of the noncompliance and will specify the amount of the stipulated penalties owed. Defendant may initiate dispute resolution under Section XI within 30 days after receipt of the demand. Defendant shall pay the amount demanded or, if they initiate dispute resolution, the uncontested portion of the amount demanded, within 30 days after receipt of the demand. Defendant shall pay the contested portion of the penalties determined to be owed, if any, within 30 days after the resolution of the dispute. Each payment for: (a) the uncontested penalty demand or uncontested portion, if late, and; (b) the contested portion of the penalty demand determined to be owed, if any, must include an additional amount for Interest accrued from the payment deadline specified in the demand through the date of payment. For payments to the Trustees, Defendant shall make the payment to the DOI Natural Resource Damage Assessment and Restoration Fund per instructions provided by DOI. Defendant shall send a notice of this payment to DOJ and the Trustees, including the amount and purpose of the payment, in accordance with ¶ 38. The payment of stipulated penalties and Interest, if any, does not alter any obligation by Defendant under the Decree.

13

27.     Subject to the terms of Section XIII, nothing in this Decree limits the authority of Plaintiffs: (a) to seek any remedy otherwise provided by law for Defendant's failure to pay stipulated penalties or Interest; or (b) to seek any other remedies or sanctions available by virtue of Defendant's noncompliance with this Decree or the statutes and regulations upon which it is based.

28.     Notwithstanding any other provision of this Section, Plaintiffs may, in their unreviewable discretion, waive any portion of stipulated penalties that have accrued under this Decree.

## XIII.  COVENANTS BY PLAINTIFFS

29.     **Covenants for Defendant**. Subject to ¶¶ 30 and 31, the United States and the State covenant not to sue or to take administrative action against Defendant under section 107(a) of CERCLA for Covered Natural Resource Damages.

30.     The covenants under ¶ 29: (a) take effect upon the Effective Date; (b) are conditioned on the satisfactory performance by Defendant of the requirements of this Decree and receipt of a Certification of Completion of the NRD Work under ¶ 4.2(d) of the SOW; and (c) do not extend to any other person.

31.     **General Reservations**. Notwithstanding any other provision of this Decree, Plaintiffs reserve, and this Decree is without prejudice to, all rights against Defendant regarding the following:

a.     liability for failure by Defendant to meet a requirement of this Decree;

b.     liability under CERCLA for costs of removal or remedial action or other response costs incurred by Plaintiffs for any release occurring during the NRD Work;

c.     liability arising from the past, present, or future disposal, release, or threat of release of hazardous substances other than from the Incident;

d.     liability based on Defendant's ownership or operation of the Facility, or transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of hazardous materials at or in connection with the Facility, after the date of lodging of this Decree;

e.     liability for damages to natural resources, including assessment costs, as defined in 42 U.S.C. §§ 9601(6) & (16) that are not within the definition of Covered Natural Resource Damages; and

f.     criminal liability.

32.     Nothing in this Decree diminishes the right of the United States under sections 113(f)(2) and (3) of CERCLA to pursue any person not a party to this Decree to obtain additional response costs, response actions, or natural resource damages, and to enter into settlements that give rise to contribution protection pursuant to section 113(f)(2).

## XIV.  COVENANTS BY DEFENDANT

33.    **Covenant by Defendant.**

a.    Subject to ¶ 34, Defendant covenants not to sue and shall not assert any claim or cause of action against Plaintiffs, including Plaintiffs' contractors and employees, under CERCLA, the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the State Constitution, State law, or at common law regarding the Incident.

b.    Subject to ¶ 34, Defendant covenants not to seek any reimbursement or other payment from the Hazardous Substance Superfund through CERCLA or any other law regarding the Incident.

34.    **Defendant's Reservation**. The covenant in ¶ 33 does not apply to any claim or cause of action brought, or order issued, after the Effective Date by one or more Plaintiffs to the extent such claim, cause of action, or order is within the scope of a reservation under ¶¶ 30 and 31.a through 31.e.

35.    **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated against Defendant by either Plaintiff for injunctive relief, recovery of response costs, natural resource damages other than Covered Natural Resource Damages, or other appropriate relief relating to the Incident, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the Plaintiff(s) in the subsequent proceeding were or should have been brought in the instant case.

## XV.  EFFECT OF SETTLEMENT

36.    Nothing in this Decree shall be construed to create any right in, or grant any cause of action to, any person not a Party to this Decree. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right of contribution), defenses, claims, demands, and causes of action which each Party may have against any person not a party hereto.

37.    Defendant shall, with respect to any suit or claim brought by it for matters related to this Decree, notify Plaintiffs no later than 60 days prior to the initiation of such suit or claim. Defendant shall, with respect to any suit or claim brought against it for matters related to this Decree, notify Plaintiffs within 10 days after service of the complaint on Defendant. In addition, Defendant shall notify Plaintiffs within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

## XVI.  NOTICES AND SUBMISSIONS

38.    All agreements, approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, waivers, and requests specified in this Decree must be in writing unless otherwise specified. Whenever a notice is required to be given or a report or

other document is required to be sent by one Party to another under this Decree, it must be sent as specified below. All notices under this Section are effective upon receipt, unless otherwise specified. In the case of emailed notices, there is a rebuttable presumption that such notices are received on the same day that they are sent. Any Party may change the method, person, or address applicable to it by providing notice of such change to all Parties.

| | | |
|---|---|---|
| As to DOJ: | *via email to*: | |
| | eescdcopy.enrd@usdoj.gov | |
| | Re: DJ # 90-11-3-12350 | |
| As to the Trustees: | *via email to*: | |
| | clare.cragan@sol.doi.gov | |
| | Re: Flat Creek Hazardous Substance Release | |
| | david_rouse@fws.gov | |
| | Re: Flat Creek Hazardous Substance Release | |
| | *via email to*: | |
| | cheld@law.ga.gov | |
| | kate.iannuzzi@dnr.ga.gov | |
| As to Defendant: | *via email to*: | |
| | bo.weber@goldcreekfoods.com | |
| | *with a copy to*: | |
| | soday@sgrlaw.com | |

## XVII. APPENDIXES

39.    The following appendixes are attached to and incorporated into this Decree:

"Appendix A" is the SOW.

## XVIII.    MODIFICATIONS TO DECREE

40.    Except as provided in ¶ 6.5 of the SOW (Approval of Deliverables), nonmaterial modifications to this Consent Decree must be in writing and are effective when signed (including electronically signed) by the Parties. Material modifications to this Consent Decree must be in writing, signed (which may include electronically signed) by the Parties, and are effective upon approval by the Court.

## XIX.  SIGNATORIES

41.    Each undersigned representative of the Defendant, the State, and the Principal Deputy Assistant Attorney General of the Environment and Natural Resources Division of the Department of Justice identified on the DOJ signature page below, certifies that they are authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally the Party that they represent to this document.

16

## XX.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

42.     If for any reason the Court should decline to approve this Decree in the form presented, this agreement, except for ¶¶ 43.a and 43.b, is voidable at the sole discretion of any Party and its terms may not be used as evidence in any litigation between the Parties.

43.     **Public Comment**.

a.     This Decree will be lodged with the Court for at least 30 days for public notice and comment in accordance with section 122(d)(2) of CERCLA and 28 C.F.R. § 50.7. The United States may withdraw or withhold its consent if the comments regarding the Decree disclose facts or considerations that indicate that the Decree is inappropriate, improper, or inadequate. Defendant agrees not to oppose or appeal the entry of this Decree.

b.     The Trustees will publish a draft Restoration Plan and Environmental Assessment for the Flat Creek Hazardous Substance Release for at least 30 days for public notice and comment to coincide with the public comment period for this Decree.

## XXI.   INTEGRATION

44.     This Decree constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, regarding the subject matter of the Decree.

## XXII. FINAL JUDGMENT

45.     Upon entry of this Decree by the Court, this Decree constitutes a final judgment under Fed. R. Civ. P. 54 and 58 among the Parties.

SO **ORDERED** this ___ day of _____, 20__.


_____

United States District Judge

Signature Page for Consent Decree in *U.S. v. Gold Creek Foods, LLC* (N.D. GA)

FOR THE UNITED STATES OF AMERICA

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

SHEILA McANANEY
BETHANY ENGEL
Senior Attorneys
Environmental Enforcement Section
Environment and Natural Resources
 Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 616-6535
sheila.mcananey@usdoj.gov


THEODORE S. HERTZBERG
United States Attorney

ANTHONY C. DECINQUE
Assistant United States Attorney
Georgia Bar No. 130906
Anthony.DeCinque@usdoj.gov
United States Attorney's Office
600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
Ph: (404) 581-6000
Fx: (404) 581-6181

Signature Page for Consent Decree in *U.S. v. Gold Creek Foods, LLC* (N.D. GA)

**FOR THE STATE OF GEORGIA**
**DEPARTMENT OF NATURAL**
**RESOURCES:**

Name Christopher R. Held
Title Senior Assistant Attorney General
Address 40 Capitol Sq
         Atlanta, GA 30334

Signature Page for Consent Decree in *U.S. v. Gold Creek Foods, LLC* (N.D. GA)

**FOR:   GOLD CREEK FOODS, L.L.C.**

2/19/2026
Dated

Name: ROBERT A. WEBER, JR.
Title: GENERAL Counsel
Address: P.O. Box 2307
Gainesville, GA 30503

If the Decree is not approved by the Court within 60 days after the date of lodging, and the United States requests, the Defendant agrees to accept service of the complaint by mail, and to execute a waiver of service of a summons under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. **The Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service.** The Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint.

Name:   Stephen E. O'Day
Title:   Partner
Company:   Smith, Gambrell & Russell, LLP
Address:   1105 West Peachtree St., Ste. 1000
Atlanta, GA 30309
Phone:   404-815-3527
email:   soday@sgrlaw.com

20

# Appendix A-Statement of Work

**TABLE OF CONTENTS**

1.    INTRODUCTION ........................................................................................3

2.    COORDINATION AND SUPERVISION ...................................................3

3.    RESTORATION DESIGN ..........................................................................4

4.    RESTORATION PROJECT IMPLEMENTATION ....................................5

5.    PROGRESS REPORTING...........................................................................7

6.    DELIVERABLES........................................................................................7

7.    SCHEDULES ............................................................................................10

## 1.    INTRODUCTION

1.1    **Purpose of SOW**. This SOW sets forth the procedures and requirements for implementing the Work.

1.2    **Definitions**. The terms used in this SOW that are defined in CERCLA, in regulations promulgated under CERCLA, or in the Consent Decree ("Decree"), have the meanings assigned to them in CERCLA, in such regulations, or in the Decree, except that the term "Paragraph" or "¶" means a paragraph of the SOW, and the term "Section" means a section of the SOW, unless otherwise stated.

1.3    **Structure of the SOW**

- Section 2 (Coordination and Supervision) contains the provisions for selecting the Project Coordinators regarding the Work.
- Section 3 (Restoration Design) sets forth the process for submission of specified Restoration Design deliverables.
- Section 4 (Restoration Project Implementation) sets forth requirements regarding the completion of the Restoration Project, including primary deliverables related to completion of the Restoration Project.
- Section 5 (Progress Reporting) sets forth Defendant's progress reporting obligations.
- Section 6 (Deliverables) describes the contents of the supporting deliverables and the general requirements regarding Defendant's submission of, and Trustee review of, approval of, comment on, and/or modification of, the deliverables.
- Section 7 (Schedules) sets forth the schedule for submitting the primary deliverables, specifies the supporting deliverables that must accompany each primary deliverable, and sets forth the schedule of milestones regarding the completion of the Restoration Project.

1.4    The Scope of the Restoration includes the actions described in Nutter and Associate's 2022 Technical Memorandum NO. 20060.01, draft Restoration Plan, and Consent Decree.

## 2.    COORDINATION AND SUPERVISION

2.1    **Project Coordinators**

(a)    Defendant's Project Coordinator must have sufficient technical expertise to coordinate the Work and have a quality assurance system in place. Defendant's Project Coordinator may not be an attorney representing Defendant in this matter. Defendant's Project Coordinator may assign other representatives, including other contractors, to assist in coordinating the Work.

(b)    The U.S Fish and Wildlife Service (Service), on behalf of the Department of the Interior (DOI), shall designate and notify the Defendant of the Service's Project Coordinator and Alternate Project Coordinator. The Service may designate other representatives, which may include its employees, contractors, and/or consultants, to oversee the Work.

3

(c)     The State of Georgia (State) shall designate and notify the Service and the Defendant of its Project Coordinator and Alternate Project Coordinator. The State may designate other representatives, including its employees, contractors and/or consultants to oversee the Work. For any meetings and inspections in which the Service's Project Coordinator participates, the State's Project Coordinator also may participate.

(d)     Defendant's Project Coordinators shall communicate with the Service's and the State's Project Coordinators at least monthly.

## 2.2     Procedures for Disapproval/Notice to Proceed

(a)     Defendant shall designate, and notify the Service, on behalf of the DOI, and the State (together "Trustees"), within 10 days after the Effective Date, of the name, title, contact information, and qualifications of the Defendant's proposed Project Coordinator, whose qualifications shall be subject to the Trustees' review for verification based on objective assessment criteria (*e.g.*, experience, capacity, technical expertise) and confirmation that they do not have a conflict of interest with respect to the project.

(b)     The Trustees shall issue notices of disapproval and/or authorizations to proceed regarding any proposed Project Coordinator. If the Trustees issue a notice of disapproval, Defendant shall, within 30 days, submit to the Trustees a list of alternative proposed Project Coordinators, including a description of the qualifications of each. Defendant may select any coordinator/contractor covered by an authorization to proceed and shall, within 21 days, notify the Trustees of Defendant's selection.

(c)     Defendant may change their Project Coordinator by following the procedures of ¶¶ 2.2(a) and 2.2(b).

## 3.     RESTORATION DESIGN

3.1     **Pre-final (95%) Design**. Defendant shall submit the Pre-final (95%) Design for Trustees' comment. The Pre-final Design must be a continuation and expansion of the previous design submittal (Miller, S. and Greco, T. 2022. Conceptual Restoration Plan, Flat Creek, Dawson County, Georgia. Technical Memorandum No. 20060.01) and be certified in accordance with ¶ 6.4 (Certification). The Pre-final Design will serve as the approved Final (100%) Design if the Trustees approve the Pre-final Design without comments. The Pre-final Design must include:

(a)     Plans for implementing all Restoration Project activities identified in this SOW, or required by the Trustees to be conducted to develop the Restoration Design;

(b)     Description of any areas requiring clarification and/or anticipated problems (*e.g.,* data gaps);

4

(c)    A description of the proposed general approach to contracting, construction, operation, maintenance, and monitoring of the Restoration Project as necessary to implement the Work;

(d)    A complete set of construction drawings and specifications that are: (1) certified by a certified design professional pursuant to GA Rules and Reg 600-8-1-.03(b); and (2) suitable for procurement;

(e)    A description of the responsibility and authority of all organizations and key personnel involved with the development of the Restoration Design;

(f)    Description of plans for obtaining access in connection with the Work, such as property acquisition, property leases, and/or easements;

(g)    Descriptions of regulatory permit(s) requirements, if applicable, and plans for satisfying all regulatory permitting requirements. To the extent that Defendant must obtain a federal, state or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief pursuant to Section X of the Decree (Force Majeure) for any delay resulting from failure to obtain a permit or approval, provided Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals;

(h)    A proposed schedule for the construction portion of the Restoration Project including performance monitoring (Restoration Project Construction);

(i)    Any proposed revisions to the Restoration Project Implementation Schedule that is set forth in ¶ 7.3 (Restoration Project Implementation Schedule);

(j)    A specification for photographic documentation of the Restoration Project; and

(k)    Pre-final versions of the following supporting deliverables described in ¶ 6.6 (Supporting Deliverables): Health and Safety Plan; and Construction Quality Assurance/Quality Control Plan.

3.2    **Final (100%) Design**. Defendant shall submit the Final (100%) Design for Trustee approval. The Final Design must address any Trustees' comments on the Pre-final Remedial Design and must include final versions of all Pre-final Remedial Design deliverables.

## 4.    RESTORATION PROJECT IMPLEMENTATION

### 4.1    Meetings and Inspections

(a)    **Preconstruction Conference**. Defendant shall hold a preconstruction conference with the Trustees, Defendant's construction contractor, and others as directed or approved by the Trustees.

(b)     **Periodic Communications**. During Restoration Project Construction, Defendant shall provide updates as requested to the Trustees, and others as directed or determined by the Trustees, to discuss construction issues. The Trustees may request a conference with Defendant during the Restoration Project Construction period.

(c)     **Inspections**

    (1)     Trustees or their representatives may conduct periodic inspections of, or have an on-site presence during, the Work. At the Trustees' request, Defendant's Project Coordinator or other designee shall accompany the Trustees or their representatives during inspections.

    (2)     Upon notification by the Trustees of any deficiencies in the Restoration Project Construction as compared to the approved Final Design, Defendant shall take all necessary steps to correct the deficiencies and/or bring the Restoration Project Construction into compliance with the approved Final Design and/or any approved design changes.

**4.2     Restoration Project Construction Completion**

(a)     **Restoration Project Completion Inspection**. The Restoration Project is "Complete" for purposes of this ¶ 4.2 when it has been fully performed and the Performance Standards have been achieved. Defendant shall schedule an inspection for the purpose of obtaining the Trustees' Certification of Project Completion. The inspection must be attended by Defendant or its representative, Defendant's Project Coordinator, and the Trustees or their representatives.

(b)     **Restoration Completion and Monitoring Report**. Following the inspection, Defendant shall submit a Restoration Completion and Monitoring Report to the Trustees requesting Trustees' Certification of Project Completion. The report must: (1) include certifications by a certified design professional pursuant to GA Rules and Reg 600-8-1-.03(b) and by Defendant's Project Coordinator that the Restoration Project is complete; (2) include as-built drawings signed and certified by a certified design professional pursuant to GA Rules and Reg 600-8-1-.03(b); (3) contain monitoring data to demonstrate that Performance Standards have been achieved; and (4) be certified in accordance with ¶ 6.4 (Certification).

(c)     If the Trustees conclude that the Restoration Project is not Complete, the Trustees will notify Defendant. The Trustees' notice must include a description of any deficiencies. The Trustees' notice may include a schedule for addressing such deficiencies or may require Defendant to submit a schedule for Trustee approval. Defendant shall perform all activities described in the notice in accordance with the schedule. Defendant shall schedule an inspection once activities described in the notice have been performed for the purpose of obtaining the Trustees' Certification of Project Completion. The inspection must be attended by Defendant or its representative, Defendant's Project Coordinator, and the Trustees or their

representatives. Any dispute regarding completeness of the Restoration Project, deficiencies alleged by the Trustees, or schedule for addressing alleged deficiencies may be resolved pursuant to Section XI of the Decree (Dispute Resolution).

(d)    If the Trustees conclude, based on the initial or any subsequent Restoration Completion and Monitoring Report requesting Certification of Project Completion, that the Restoration Project is Complete, the Trustees shall so certify to Defendant. This certification will constitute the Certification of Project Completion for purposes of the Decree, including Section XIII of the Decree (Covenants by Plaintiffs). Certification of Project Completion will not affect Defendant's remaining obligations under the Decree.

## 5.    PROGRESS REPORTING

5.1    **Progress Reports**. Commencing 30 days following lodging of the Decree and until the Trustees issue the Certification of Project Completion, Defendant shall submit progress reports to the Trustees on a quarterly basis. The parties may agree to more frequent progress reporting during the design and construction phases. The reports must cover all activities that took place during the prior reporting period, including:

(a)    The actions that have been taken toward achieving compliance with the Decree;

(b)    A summary of all results of sampling, tests, and all other data received or generated by Defendant;

(c)    A description of all deliverables that Defendant submitted to the Trustees;

(d)    A description of all activities relating to Restoration Project Design or Restoration Project Construction that are scheduled for the next quarter;

(e)    A description of any modifications to the work plans or other schedules that Defendant proposed or that have been approved by the Trustees.

5.2    **Notice of Progress Report Schedule Changes**. If the schedule for any activity described in the Progress Reports, including activities required to be described under ¶ 5.1(d), changes, Defendant shall notify the Trustees of such change at least seven days before performance of the activity.

## 6.    DELIVERABLES

6.1    **Applicability**. Defendant shall submit deliverables for Trustee approval or for Trustee comment as specified in the SOW. If neither is specified, the deliverable does not require Trustee approval or comment. Paragraphs 6.2 (In Writing) through 6.3 (General Requirements for Deliverables) apply to all deliverables. Paragraph 6.4 (Certification) applies to any deliverable that is required to be certified. Paragraph 6.5 (Approval of Deliverables) applies to any deliverable that is required to be submitted for Trustee approval.

**6.2    In Writing**. As provided in ¶ 38 of the Decree, all deliverables under this SOW must be in writing unless otherwise specified. Electronic submittal satisfies the "in writing" requirement.

**6.3    General Requirements for Deliverables.** All deliverables must be submitted by the deadlines in the Restoration Design Schedule or Restoration Project Implementation Schedule, as applicable. Defendant shall submit all deliverables to the Trustees in electronic form.

**6.4    Certification**. All deliverables that require compliance with this paragraph must be signed by the Defendant's Project Coordinator, or other responsible official of Defendant, and must contain the following statement:

> I certify under penalty of perjury that this document and all attachments were prepared by me or under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. The information submitted is, to the best of my knowledge and belief, true, accurate, and complete.

**6.5    Approval of Deliverables**

(a)    **Initial Submissions**

(1)    After review of any deliverable that is required to be submitted for Trustee approval under the Decree or the SOW, the Trustees shall: (i) approve, in whole or in part, the submission; (ii) approve the submission upon specified conditions; (iii) disapprove, in whole or in part, the submission; or (iv) any combination of the foregoing.

(2)    The Trustees also may modify the initial submission to cure deficiencies in the submission if: (i) the Trustees determine that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (ii) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

(b)    **Resubmissions**. Upon receipt of a notice of disapproval under ¶ 6.5(a) (Initial Submissions), or if required by a notice of approval upon specified conditions under ¶ 6.5(a), Defendant shall, within 30 days or such longer time as specified by the Trustees in such notice, correct the deficiencies and resubmit the deliverable for approval. After review of the resubmitted deliverable, the Trustees may: (1) approve, in whole or in part, the resubmission; (2) approve the resubmission upon specified conditions; (3) modify the resubmission; (4) disapprove, in whole or in part, the resubmission, requiring Defendant to correct the deficiencies; or (5) any combination of the foregoing.

(c) **Implementation**. Upon approval, approval upon conditions, or modification by the Trustees under ¶ 6.5(a) (Initial Submissions) or ¶ 6.5(b) (Resubmissions), of any deliverable, or any portion thereof: (1) such deliverable, or portion thereof, will be incorporated into and enforceable under the Decree; and (2) Defendant shall take any action required by such deliverable, or portion thereof. The implementation of any non-deficient portion of a deliverable submitted or resubmitted under ¶ 6.5(a) or ¶ 6.5(b) does not relieve Defendant of any liability for stipulated penalties under Section XII (Stipulated Penalties) of the Decree.

(d) If: (1) an initially submitted deliverable contains a material defect and the conditions are met for modifying the deliverable under ¶ 6.5(a)(2); or (2) a resubmitted deliverable contains a material defect; then the material defect constitutes a lack of compliance for purposes of this Paragraph.

(e) Any dispute regarding the adequacy of any deliverable, deficiencies alleged by the Trustees, or schedule for addressing alleged deficiencies may be resolved pursuant to Section XI of the Decree (Dispute Resolution).

6.6 **Supporting Deliverables**. Defendant shall submit each of the following supporting deliverables for Trustee approval, except as specifically provided. Defendant shall update each of these supporting deliverables as necessary or appropriate during the course of the Work.

(a) **Health and Safety Plan ("HASP")**. The HASP describes all activities to be performed to protect on site personnel and area residents from physical, chemical, and all other hazards posed by the Work. Defendant shall develop the HASP in accordance with Occupational Safety and Health Administration ("OSHA") requirements under 29 C.F.R. §§ 1910 and 1926. The HASP should cover Restoration Design activities and should be, as appropriate, updated to cover activities during Restoration Project Implementation. The Trustees do not approve the HASP but will review it to ensure that all necessary elements are included and that the plan provides for the protection of human health and the environment.

(b) **Emergency Response Plan ("ERP")**. The ERP must describe procedures to be used in the event of an accident or emergency at the Site (for example, power outages, water impoundment failure, slope failure, etc.). If the Trustees do not take action on the ERP in accordance with ¶ 6.5(a) within 14 days of ERP submission, Defendant can assume that the ERP is approved.

(c) **Construction Quality Assurance Plan ("CQAP") and Construction Quality Control Plan ("CQCP")**. The purpose of the CQAP is to describe planned and systemic activities that provide confidence that the Restoration Project Construction will satisfy all plans, specifications, and related requirements, including quality objectives. The purpose of the CQCP is to describe the activities to verify that Restoration Project Construction has satisfied all plans, specifications, and related requirements, including quality objectives. The CQAP/CQCP ("CQA/CP") must:

9

    (1)     Identify, and describe the responsibilities of, the organizations and personnel implementing the CQA/CP;

    (2)     Describe the Performance Standards required to be met to achieve Completion of the Restoration Project under ¶ 4.2;

    (3)     Describe the activities to be performed: (i) to provide confidence that Performance Standards will be met; and (ii) to determine whether Performance Standards have been met;

    (4)     Describe verification activities, such as inspections, sampling, testing, monitoring, and production controls, under the CQA/CP;

    (5)     Describe industry standards and technical specifications used in implementing the CQA/CP;

    (6)     Describe procedures for tracking construction deficiencies from identification through corrective action; and

    (7)     Describe procedures for documenting all CQA/CP activities.

## 7.    SCHEDULES

**7.1    Applicability and Revisions**. All deliverables and tasks required under this SOW must be submitted or completed by the deadlines or within the time durations listed in the Restoration Design and Restoration Project Implementation Schedules set forth below. The Restoration Design and Restoration Project Implementation Schedules are based on the Start of Restoration Project Construction occurring during the October 1, 2025 - March 31, 2026 time period. However, Defendant may submit proposed revised Restoration Design Schedules or Restoration Project Implementation Schedules for Trustee approval. Upon the Trustees' approval, the revised Restoration Design and/or Restoration Project Implementation Schedules supersede the Restoration Design and Restoration Project Implementation Schedules set forth below, and any previously-approved Restoration Design and/or Restoration Project Implementation Schedules. Pursuant to Paragraph 9 of the Decree, Defendant will make best efforts to obtain access to the restoration project location.

**7.2    Restoration Design Schedule**

| | Description of Deliverable, Task | ¶ Ref. | Deadline |
|---|---|---|---|
| 1 | Pre-final (95%) Design | 3.1 | 45 days after Trustees' Authorization to Proceed regarding Project Coordinator |
| 2 | Final (100%) Restoration Design | 3.2 | 30 days after Trustee comments on Pre-final Restoration Design |

10

**7.3    Restoration Project Implementation Schedule**

| | Description of Deliverable / Task | ¶ Ref. | Deadline |
|---|---|---|---|
| 1 | Preconstruction Conference | 4.1(a) | Within 30 days of Trustees' approval of the Final Restoration Design |
| 2 | Start of Restoration Project Construction | | Within 21 days after Preconstruction Conference. However, if 21 days after the Preconstruction Conference is a date between March 31 and July 1, the Start of Restoration Construction with occur on July 22 or the next business day thereafter. |
| 3 | Completion of Restoration Project Construction | | Per the approved Final Restoration Design |
| 4 | Pre-final Inspection | 4.1(a) | 30 days after completion of Restoration Project Construction |
| 5 | Pre-final Restoration Completion and Monitoring Report | 4.2(b) | 30 days after completion of Pre-final Inspection |
| 6 | Final Inspection, if applicable | 4.2(c) | 15 days after completion of work identified in Trustee deficiency notice |
| 7 | Restoration Project and Monitoring Report | 4.2(b), (d) | 30 days after Final Inspection, if any |